UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CONNIE F. MILLIGAN,<br>      Plaintiff, | )<br>)<br>) |
| v. | )    CAUSE NO.: 1:20-CV-266-JPK |
| KILOLO KIJAKAZI,<br>Commissioner of Social Security<br>Administration,<br>      Defendant. | )<br>)<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1] and Plaintiff's Opening Brief [DE 23]. Plaintiff challenges the September 5, 2019, decision of the Administrative Law Judge (ALJ) denying her claims for disability insurance benefits. Defendant filed a Memorandum in response. [DE 26]. Plaintiff did not file a reply brief. The singular issue presented, whether the Social Security Administration met its burden of proof at step five after the Plaintiff challenged the reliability of a vocational expert's methodology, compels remand.

### PROCEDURAL BACKGROUND

On July 14, 2017, Plaintiff filed an application for disability insurance benefits. Plaintiff alleged disability beginning June 14, 2014, due to knee pain; arthritis in her hands, fingers, ankles, and knees; high blood pressure; heart murmur; anxiety; PTSD; borderline diabetes; anemia; acid reflux; and diverticulitis. (AR 201).[1] Plaintiff's July 2017 application was denied initially and on reconsideration. (AR 103-06, 111-17). Plaintiff then requested a hearing, which was held before

---

[1] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which are found on the lower right corner of the page, and not the page numbers assigned by the Court's CM/ECF system.

an Administrative Law Judge (ALJ) on June 12, 2019. (AR 118, 136). On September 5, 2019, the ALJ issued an unfavorable decision, making the following findings:[2]

>    1.      The claimant last met the insured status requirements of the Social Security Act on June 30, 2017.
>
>    2.      The claimant did not engage in substantial gainful activity during the period from her alleged onset date of June 14, 2014 through her date last insured of June 30, 2017.
>
>    3.      Through the date last insured, the claimant had the following severe impairments: generalized anxiety disorder, PTSD, major depression with anxious distress, osteoarthritis in both knees (status post bilateral total knee arthroplasty), morbid obesity, and osteoarthritis of the hands.
>
>    4.      Through the date last insured, the claimant does not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
>    5.      … [T]hrough the date last insured, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she could never climb ladders, ropes, or scaffolds and she could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She could further perform frequent handling and fingering with the bilateral upper extremities and she needed to avoid unprotected heights and dangerous moving machinery. She was also able to perform simple, routine, and repetitive tasks with no production rate pace (like assembly-line work) and with only occasional simple work-related decision-making. She could further maintain attention and concentration for two-hour segments, respond appropriately to occasional changes in the workplace, have occasional interactions with co-workers and the general public, and have frequent interactions with supervisors apart from what is necessary for general instruction, task completion, or training.
>
>    6.      Through the date last insured, the claimant was unable to perform any past relevant work.
>
>    7.      The claimant was born on July 29, 1969 and was 44 years old on the alleged onset date and 47 years old on the date last insured. Thus, she was considered to be a younger individual age 18-49 during the period at issue in this decision.

---

[2] These findings quote the bolded findings throughout the ALJ's decision. Internal citations to the Code of Federal Regulations are omitted.

> 8. The claimant has at least a high school education and is able to communicate in English.
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.
>
> 10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.
>
> 11. The claimant was not under a disability, as defined in the Social Security Act, at any time from June 14, 2014, the alleged onset date, through June 30, 2017, the date last insured.

(AR 17-29).

Plaintiff then appealed to the Appeals Council. The Appeals Council denied review. (AR 1-6). Plaintiff then filed this civil action seeking review of the Agency's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability," which is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, (3) whether the claimant's impairment or combination of impairments meets or medically equals the criteria of any presumptively disabling impairment listed in the regulations, (4) if the claimant does not meet a listing, whether

4

she is unable to perform her past relevant work, and (5) if the claimant is unable to perform past relevant work, whether she is unable to perform any work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

## ANALYSIS

Plaintiff asserts one ground for reversal of the ALJ's September 2019 decision. Plaintiff contends that the ALJ's step five finding is not supported by substantial evidence because the VE's testimony is insufficient to estimate how many jobs would be available to Plaintiff in the national economy. Pl.'s Br. 14-18 [DE 23]. Specifically, Plaintiff asserts that the VE did not properly explain how he determined the job numbers at the hearing. *Id.* at 14-28.

In order to properly discuss the parties' arguments, some background regarding the Dictionary of Occupational Titles ("DOT"), Standard Occupational Classification ("SOC"), and Occupational Information Network ("O*NET") is required. As explained by one court, "[t]he [DOT] is a catalog of jobs that contains no statistics regarding the number of jobs in a given category that exist in the national economy." *Chavez v. Saul*, No. 1:19-CV-301 DRL, 2020 WL 5494744, at *3 n.1 (N.D. Ind. Sept. 11, 2020) (citing *Herrmann v. Colvin*, 772 F.3d 1110, 1114 (7th Cir. 2014)). The SOC, in turn, "was developed by the Bureau of Labor Statistics to replace

5

the DOT system. The SOC codes are much broader than the DOT titles, meaning many DOT titles might fall within a single SOC code." *Id.* at *3 n.2 (citing *Goode v. Comm'r of Soc. Sec.,* 966 F.3d 1277, 1283 (11th Cir. 2020); *Brault v. SSA*, 683 F.3d 443, 447 (2d Cir. 2012)). The Seventh Circuit Court of Appeals has explained that the DOT "describes only job duties and requirements, without also reporting an estimate of how many of those positions exist in the national economy." *Chavez v. Berryhill*, 895 F.3d 962, 965 (7th Cir. 2018). Therefore,

> [t]o determine the number of jobs, a VE must consult another resource. One commonly used is the Department of Labor's compilation of Occupational Employment Statistics. That publication does not use the DOT job grouping system, but instead relies upon another classification system, the [SOC].
>
> The use of one system to supply the job titles and another to provide the number of jobs creates a matching problem; a one-to-one correlation does not exist. When a VE identifies an SOC code and the number of jobs in that code, that number approximates (at best) the number of positions with a DOT job group – not the specific DOT job title that the VE identified as suitable for a particular claimant.

*Id.* at 956-66. The law does not require that VEs provide an exact number of jobs available for any given position and, indeed, the Court of Appeals has acknowledged that "[a] VE's estimate will be just that – an estimate." *Id.* at 968 ("The VE necessarily must approximate, and there is no way to avoid uncertainty in doing so."). Nonetheless, "any method that the agency uses to estimate job numbers must be supported with evidence sufficient to provide some modicum of confidence in its reliability." *Id.* at 969. To put it simply, "a VE must use some method for associating SOC-based employment numbers to DOT-based job types." *Chavez v. Saul*, 2020 WL 5494744, at *3 n.2 (quoting *Brault*, 683 F.3d at 446).

The O*NET is the Occupational Information Network, and it has "superseded the DOT as the federal government's primary source of occupational information." *Horsley v. Commissioner of Social Security*, 1:11CV703, 2013 WL 980315, at *6 (S.D. Ohio Mar. 13, 2013) (citing *Ricard v. Astrue*, 1:09-008, 2009 WL 5031317, at *9 (M.D. Tenn. Dec. 14, 2009). "[T]he VE is not

required to limit his hypothetical to DOT data; the VE can also use outside data, including ONET." *Moss v. Astrue*, 09-1196, 2010 WL 2572040, at *20 (C.D. Ill. June 22, 2010).

In this case, when Plaintiff's counsel asked the VE to describe the methodology he used, the VE testified as follows:

> First identify the DOT code and do a crosswalk to the O*NET, and from there get the standard occupational classification codes. Once we have that, we look at the most recent occupational employment statistics information, locate the OES code that corresponds with that SOC number. We would look at that falls within that occupational employment statistics code.
>
> Once we have that, then I'm looking at the updated state and federal information with regard to jobs that exist in those particular categories, and the DOT titles, actually job titles, and relate them to DOT titles, as well as based on my experience of just analyzing and looking at labor information on how those jobs exist in the economy. Once I have that information, then do a weighting to determine the estimates of numbers of jobs in each DOT title.

(AR 71-72). When asked by Plaintiff's counsel if there was a specific mathematical equation used, the VE stated that "it depends on the number of DOT titles that are in each category . . . it depends on the number of jobs and job titles that are on the updated labor information that would come into play in doing the labor and that process." (*Id.*).

After this description, Plaintiff's counsel objected to the step five analysis. (AR 72). The ALJ then asked the VE if other vocational experts use the same method, and the VE answered in the affirmative. (*Id.*). The ALJ ultimately found the VE's explanation of his process in determining job numbers to be adequate, and noted that Plaintiff's counsel was unable to articulate how the VE's method was unreliable. (AR 28). The ALJ accepted the VE's testimony regarding jobs in the economy that plaintiff could perform as reliable. (AR 29).

The Commissioner argues that the VE properly supported his finding with sufficient evidence, as his testimony "illustrated that he based his estimate on multiple sources that he combined." Def.'s Mem. 5 [DE 26]. The Commissioner relies primarily upon on two cases to

support her position. *Id.* at 6-7. First, the Commissioner notes that the Supreme Court of the United States recently held that "[a] vocational expert's testimony may count as substantial evidence even when unaccompanied by supporting data." *Id.* at 7 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1155 (2019)). Second, the Commissioner cited to a recent unpublished decision from the Seventh Circuit, which found that even when a VE's description "did not reveal the precise mechanics and statistical model involved, it nevertheless constitutes a 'reasoned and principled explanation,' at least by the low substantial evidence standard." *Bruno v. Saul*, 817 Fed. Appx. 238, 243 (7th Cir. 2020) (citation omitted).

The Court rejects any broad attempt to suggest that VEs must follow a particular method of analysis. As the Supreme Court has made clear, VE testimony is ordinarily not subject to categorical rules, and "[t]he inquiry, as is usually true in determining the substantiality of evidence, is case-by-case." *Biestek*, 139 S. Ct. at 1157. In estimating job numbers, an exact figure is not necessary, as "[a] VE's estimate will be just that – an estimate." *Chavez*, 895 F.3d at 968. However, the VE's testimony must be supported with enough evidence to "instill some confidence that the estimate was not 'conjured out of whole cloth.'" *Brace v. Saul,* 970 F.3d 818, 822 (7th Cir. 2020) (citing *Donahue v. Barnhart,* 279 F.3d 441, 446 (7th Cir. 2002)). The question is whether the VE properly explained his methodology and provided substantial evidence that it was reliable.

Plaintiff relies on *Brace* in arguing that the VE's failure to provide a specific methodology is fatal, as the Seventh Circuit held in *Brace* that a VE's statement about "weighting" the job numbers was "unintelligible." *Brace*, 970 F.3d at 822. The Commissioner is correct that *Brace* is at least somewhat distinguishable from the case at hand, yet as discussed below Plaintiff still has the better of the argument. In *Brace*, the VE both failed to identify any methodology for determining job numbers and did not show his method was well-accepted. *Id.* at 822-23. When

asked to explain how he reach his job estimates, the VE's answer was "entirely unilluminating." *Id.* The VE stated that he looked at job titles, and based on "[his] information," he did "an allocation based upon weighting or reweighting those allocations to get the estimates of the numbers." *Id.* The Seventh Circuit found that this explanation did not satisfy the substantial evidence standard, as it was not clear what criteria was used to do the weighting and re-weighting, nor was it clear what was in the unidentified information the VE mentioned. *Id.*

The VE in the present case provided slightly more information concerning what he looked to in researching job data, and indicated he utilized the same method as other VEs. The VE testified that he used the SOC numbers, the DOT titles, and updated federal and state information along with his own experience to estimate the number of jobs available. (AR 71-72). However, he failed to cogently lay out a method, much less one he showed was reliable. For example, he testified that he did a "weighting to determine the estimates of numbers of jobs," but it is unclear what "weighting" means in this context. Even if the words somewhat differed, this certainly has echoes of the "trust me" approach the Seventh Circuit criticized in *Brace.* 970 F.3d at 882 ("Testimony that incants unelaborated words and phrases such as 'weighting' and 'allocation' . . . cannot possibly satisfy the substantial-evidence standard. What allocations? How is the weighting and re-weighting performed? According to what criteria?").

Many of the cases Plaintiff relies on discuss the use of the "equal distribution method," which the Seventh Circuit has repeatedly criticized. *Brace*, 970 F.3d at 822; *Alaura*, 797 F.3d at 507-08. The equal distribution method estimates jobs by assuming that "all job titles in a large category share the category's number of jobs equally." *Brace*, 970 F.3d at 821 (citing *Alaura*, 797 F.3d at 507-08). The Seventh Circuit held that such an approach "is preposterous." 797 F.3d at 508. In *Brace,* the parties could not agree whether the VE used the equal distribution method or

not, and the Seventh Circuit held that when the VE's testimony did not clarify whether he used the equal distribution method, it "does not satisfy the substantial-evidence standard." 970 F.3d at 823 (citing *Chavez*, 895 F.3d at 970). There may have been an element of equal distribution in the VE's method here; the VE testified that his estimate "depends on the number of DOT titles that are in each category" (AR 72), although he did not say whether the jobs were distributed equally among those titles, or in some other way. Again, it is unclear what methodology was used.

This record provides little clarity on exactly how the VE arrived at his estimate. To be sure, this is no easy task given the data sets VE often use. As both this Court and the Seventh Circuit have repeatedly stressed, the cross referencing of multiple titles forces the reviewing court and the VE to track not just different sources, but different definitions and data sets from one source to another, which makes a cumbersome analysis even more difficult to follow. *See, e.g.*, *Ruenger v. Kijakazi,* 23 F.4th 760, 763-64 (7th Cir. 2022) and *Albright v. Kijakazi*, No. 1:20-CV-438-JPK, 2022 WL 669897, at *5 (N.D. Ind. Mar. 4, 2022) (explaining different sources, such as DOT and SOC). But when a VE says his estimates are "based on [his] experience of just analyzing and looking at labor information on how those jobs exist in the economy," (AR 71), that is little more than the "trust me" approach criticized in *Brace*. Indicating the analysis "depends on the number of jobs and job titles that are on the updated labor information that would come into play in doing the labor and that process," or involves some type of ambiguous and undefined "weighting," does not provide the type of "reasoned and principled explanation" that can surpass even the low standard of substantial evidence. *See, e.g.*, *Bruno*, 817 Fed. Appx. at 243; *Jones v. Saul*, No. 1:19-CV-494-PPS, 2021 WL 100357, at *3 (N.D. Ind. Jan. 12, 2021) ("The Seventh Circuit noted that words and phrases such as 'allocation,' 'weighting,' and 'information that I have,' without elaboration or explanation 'cannot possibly satisfy the substantial-evidence

standard.'") (citing *Brace*). And while, as the Commissioner stresses, there is no requirement that the VE provide exact data or a precise formula, that does nothing to show whether the Commissioner met her burden at step five in the instant case.

It is understandable that ALJs, faced with a dispute about methodologies for vocational estimates, may defer to an expert in that field. However, this must be balanced against a claimant's right to understand the basis for the decision, and if appropriate, to meaningfully challenge it. Recent Seventh Circuit case law has made clear that if there is an objection, VEs must provide a cogent explanation of what they are doing; the fact that a VE is an expert and uses recognized sources is not itself substantial evidence that the method is reliable. As explained by Judge Scudder:

> [N]obody can explain with coherence or confidence what the VE did to arrive at her job-numbers estimate. To my eye, the VE's testimony seemed rushed and rote, as if she expected certain questions and gave hurried and mechanical answers, without taking care—even in response to repeated objection—to explain what she did to arrive at the job-numbers estimate or why that method was reliable . . . Faced with a transcript like this one, attempting to conduct judicial review is an exercise in futility. That is why we have concluded that substantial evidence did not support the ALJ's denial of benefits . . .
>
> At the very least, the record would benefit from everyone slowing down when VEs take the stand. A disability determination may well mark the difference between income and no income for the claimant. With so much at stake in these proceedings, it is essential that a reviewing court be able to decipher the evidentiary record.

*Ruenger*, 23 F. 4th at 765 (Scudder, J. concurring).

In this case, the VE's testimony was "neither cogent nor thorough," and the method used remains unclear; therefore, there is not substantial evidence that the estimate was reliable. *Brace*, 970 F.3d at 822 ("The very existence of this debate [over the method used] confirms our conclusion that the VE's testimony does not satisfy the substantial-evidence standard."). Before compelling remand, this Court carefully reviewed the ALJ's decision to determine whether the ALJ saw something in the VE's testimony that calls this conclusion into doubt. Other than a recitation of

11

the various sources consulted and a notation that the VE used the same information as other experts, the ALJ's decision sheds no additional light on how to decipher a reliable analysis from the record. Perhaps more problematic, even though it is the Commissioner who bears the burden of proof at step five, the ALJ noted that the Plaintiff was "unable to provide a satisfactory alternative method of deriving job numbers." (AR 28). The ALJ coupled this with the fact that the Plaintiff was "unable to articulate specifically why [the VE's] method was unreliable" to reject the objection to the VE's testimony and methodology. Of course, it is hard to shoot down a methodology when none appears. And placing the burden on the Plaintiff to come up with a reliable alternative methodology would turn the step five analysis on its head.

Plaintiff also asks the Court to reverse and remand for an award of benefits or, in the alternative, for a new hearing. "Courts have the statutory power to affirm, reverse, or modify the Social Security Administration's decision, with or without remanding the case for further proceedings." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). Nonetheless, an award of benefits is generally appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Id.* at 415. Here, the record shows that the Commissioner did not reach her burden at step five, but that does not establish an affirmative finding of disability, which is required to award benefits. *Briscoe*, 425 F.3d at 357 ("[A] court does not have the authority to award disability benefits on grounds other than those provided under 42 U.S.C. § 423[, which] requires that the claimant must be disabled under the [Social Security] Act in order to qualify for benefits."); *see also Gotz v. Barnhart*, 207 F. Supp. 2d 886, 903 (E.D. Wis. 2002) ("The ALJ's failure to obtain sufficient evidence from a vocational or medical expert 'is an adjudicator making a mistake, not a party litigator failing to present

evidence.' . . . Therefore, the proper remedy for errors at step five is not usually an automatic award of benefits but rather a remand for further proceedings." (quoting *Seavey v. Barnhart*, 276 F.3d 1, 8 (1st Cir. 2001))). The briefing and the record have not demonstrated that Plaintiff is entitled to an award of benefits.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the alternative relief sought in Plaintiff's Opening Brief [DE 20], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Plaintiff and against Defendant.

So ORDERED this 28th day of March, 2022.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT